(C. D. 792)

OLAF F. SUNDT *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 7, 1943)

*Philip Stein* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

TILSON, Judge:  By this suit against the United States the plaintiff seeks to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of machine parts. Duty was levied upon said merchandise at the rate of 35 per centum ad valorem under paragraph 353 of the act of 1930, as an article having as an essential feature an electrical element or device.  The plaintiff claims said merchandise to be properly dutiable at only 27½ per centum ad valorem under paragraph 372 of the same act, as machines, or machine parts, finished or unfinished, not specially provided for.

The appraiser's special report, which was filed within 4 days of the filing of the protest herein, reads as follows:

The merchandise involved is an electrical coring apparatus having as an essential feature an electrical motor, and provided for under the provisions of paragraph 353 at 35% ad valorem.  At the time of importation the electrical motor was not a part of the imported apparatus, as said motor was to be purchased in the United States, nevertheless the electrical motor is an essential feature required for the operation of the apparatus.

In the collector's letter of transmittal, customs Form 4295, under

the heading "REASONS AND AUTHORITY FOR ACTION," the following appears:

Motor is an essential feature for the operation of the machine. Par. 353.

It is clear from the foregoing that the only reason the imported merchandise was classified under paragraph 353 of the act of 1930 was because the collector considered or determined that the electrical motor was "an essential feature required for the operation of the apparatus." At the same time we have the admission of another customs official, the appraiser, that at the time of importation the electrical motor was not a part of the apparatus imported, "as said motor was to be purchased in the United States."

The evidence offered at the trial of the case establishes that no electrical motor of any kind was imported, either with this shipment or with any other shipment to be used in connection with the imported merchandise, but that such motor was actually purchased in the United States. This evidence completely refutes the classification of the collector and destroys all presumption of correctness in fa vor of the same. The defendant offered no testimony in support of the classification of the collector, but the testimony of the only witness called by the plaintiff, shows that, as imported, the merchandise here involved was decidedly not a complete machine, but was,

* * * mostly mechanical equipment purchased in Sweden, and was to go into the manufacture of an *electrical logging device;* the electrical equipment being purchased and assembled in the United States, and the mechanical equipment being used in putting the equipment together. [Italics ours.]

The evidence further shows that the mechanical equipment imported here was not an entity in and of itself, but consisted of several cases containing parts that were to go into the manufacture of the apparatus as a whole; that one case contained a No. 22 B. D. type hoist and 3,000 meters of cable and the cable is used to conduct electricity; that this cable is,

Mounted on a hoist, and led down into the open well to be served with electrodes spaced from the bottom of the hole, and these electrodes measure the conductivity of the elements in the hole, and these electrical currents are transmitted through the cable to the surface where they are measured in an electrical registering apparatus.

The hoist has no electrical device within it, but is operated "by the power of the automobile, or by installing an auxiliary motor and using an auxiliary motor to run the hoist." When asked if any of the other items on the invoice were connected in any way with any electrical device, the witness answered:

They were not when they were imported. Later on they were put together with the electrical equipment purchased in the United States. There was no electrical equipment imported, it was mechanical equipment.

The witness further testified that the engine and the other mechanical parts imported were made for use particularly with this type of article, apparently referring to the electrical logging device; that the electric generator bought in this country was connected to the gasoline engine, that the gasoline engine created power, and the power created electrical current in the generator; that these imported parts were mechanical parts of an electrical device; all of the electrical equipment was manufactured in the United States; these were only the mechanical parts which went with the domestic electrical parts to make up an electrical log, the motor producing the power to produce the electric current, which was transmitted through the cable, and that these parts contained in cases 1, 2, 3, and 4 were parts that went into the manufacture of the apparatus here in Houston.

The evidence shows that the imported merchandise consists of necessary and integral parts of a machine, to wit: an electrical logging device, which electrical logging device was in turn composed in part of an electrical generator and an electrical registering apparatus. At first glance an electrical logging device, composed in part of an electrical generator and an electrical registering apparatus, might not appear to be *ejusdem generis* with electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, but they have one characteristic in common, an essential electrical feature. On this point, the following is quoted from *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. 51:

An examination of the language of the third division of this paragraph discloses that the articles therein *eo nomine* specified are of various types; they have, however, one characteristic in common, an essential electrical feature. A fan, a washing machine, and a sign seem to have little resemblance, but their analogy rests in the fact that electricity is the essential feature which causes them to function and perform their work. The language evidently was intended to be read, "articles * * * such as electric motors, fans", etc., thus giving these named articles as examples of such as are intended to be covered by the paragraph.

Many of the articles named in said language are such as might well function with the aid of other than electrical power, if it were not for the fact that, by being named therein, they must be considered as electrical in their nature; that is, a fan, to be included within the language, must be an electrical fan, a heater must be an electrical heater, a washing machine must be an electrical washing machine, a portable tool must be an electrical portable tool, and so on.

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

There is no showing in this case that the electrical logging device, composed in part of an electrical generator and an electrical registering apparatus, did not have as an essential feature an electrical element or device. The characteristic in common between such a machine and an electrical motor is that each has an essential electrical feature.

It might be argued that since none of the parts of machines imported in this case had as an essential feature an electrical element or device, that, therefore these parts are not dutiable under the provisions for parts of articles having as an essential feature an electrical element or device. There is nothing in the provisions of said paragraph 353 which suggests that the Congress intended that if a part of an article having as an essential feature an electrical element or device were imported with the article having as an essential feature an electrical element or device that it should be taxed with 35 per centum duty under said paragraph 353, and that if that same part were imported without the article having as an essential feature an electrical element or device it should be taxed with duty at only 27½ per centum ad valorum under said paragraph 372. Whether imported with, or separately from the article having as an essential feature an electrical element or device, such part would be a part of an article having as an essential feature an electrical element or device, and no reason appears why, in both instances, such part should not be taxed with the same rate of duty.

Therefore, the imported merchandise is just as much a part of an article having as an essential feature an electrical element or device to wit: an electrical logging device containing an electric generator and an electrical registering apparatus, as if these parts had been imported with and as a part of the electrical logging device, including its electric generator and electrical registering apparatus. Had the merchandise in this case been imported with the electrical logging device, including its electric generator and electrical registering apparatus, there would have been no escape from the conclusion that it was a part of an article having as an essential feature an electrical element or device, and since, on the record before us, it is none the less a part of the same article, even though not imported therewith, the answer must be the same.

On the record presented and for the reasons stated, we hold the merchandise in this case to be properly dutiable at the rate of 35

per centum ad valorem under paragraph 353 of the act of 1930, as parts of an article having as an essential feature an electrical element or device. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly. *Tower* v. *United States* C. D. 92.